Thank you. Our last case of the day is Doe v. Loyola University of Chicago. Mr. Serluck. May it please the court. Jonathan Serluck on behalf of the appellant John Doe. In granting Loyola's motion for summary Mr. Serluck, before we get into the merits, I have a question about the identity of the plaintiff. Has this court permitted your client to proceed anonymously? Well, when we filed our disclosure statement, we sought leave to file the formal one with his true identity under seal, and that leave was granted. It's not the same question. Have we permitted Doe to proceed anonymously? I couldn't find a ruling by the court on that. So I was interested in what the district court had said about that. And we looked and couldn't find the district court's explanation. Judge Finerman entered an order saying that Doe was being allowed to proceed anonymously for reasons stated in open court, and no one ordered a transcript. So we have absolutely no idea what the basis of anonymity is. Isn't that a problem? We filed a motion, and the reasons were stated in our motion, and I believe that Judge Finerman did. We know what was stated in your motion, but the judge didn't say for the reasons in the motion. He said for reasons stated in court. So I think we need to know Judge Finerman's reasoning. Now, we would certainly appreciate it if somebody would get a transcript of that and provide it to us. Sure. You may or may not know that another panel has under advisement to question whether anonymity is ever appropriate in Title IX cases. I'm aware of that. One would think you would be particularly careful to get that tracked down in this case. Well, Your Honor, it was not a cross appeal by Loyola. This is not a subject of a cross appeal. You need a cross appeal if you want to modify the judgment. It's not a question of modifying the judgment. It's a question of identifying the litigants. Sure, and I would be happy to submit a further brief on that, Your Honor, or provide you a transcript. I think that would be a good idea. Okay, please proceed. In granting Loyola's motion for summary judgment, the district court erred by failing to apply this court's Title IX precedent and by failing to properly apply well-established summary judgment rules. This court in Doe v. Purdue and confirmed in later opinions has held that in a Title IX case, Loyola court must look at all the evidence, a holistic view of the evidence, and the district court failed to do that. This court has said a plaintiff's case will go forward if he can combine evidence of pressure on a university to, quote, signal a commitment to cracking down on campus sexual assault with other evidence that the plaintiff was treated unfairly in his particular case. And Purdue quoted from Columbia University and stated that the pro or the cracking down on the anti-male bias can be on a temporary basis to avoid adverse publicity. Was Loyola somehow unique in facing pressures to take sexual misconduct cases more seriously during that time period? Wouldn't it be fair to say that most universities were facing pressure to take these cases more seriously? And even if there was pressure, why would that indicate gender bias? There's a couple questions there. Now, let me take the first one is, was Loyola unique? Loyola was unique in that the pressure was not just the pressure from the government, the federal government in the Dear Colleague letter or the Office of Civil Rights. There was specific targeted on-campus pressure from groups such as the Students for Reproductive Justice, which was led by women, by female students, specifically targeting the university's handling of sexual assault cases and specifically targeting Tim Love, the Deputy Title IX Coordinator, saying that he should be fired for his mishandling of sexual misconduct cases. So they are unique in that respect. With respect to the argument that how does the government pressure indicate gender bias, this court in Purdue and others have said, well, that is one possible explanation. That is one possible interpretation of the pressure on the universities. Yeah, but what are the best indications that any errors or irregularities were tied to gender bias rather than maybe negligence, incompetence? I mean, this seems like a very different situation to me from the circumstances of Doe versus Purdue University where there were some very serious indications of possible bias. So the indications of bias are the irregularities, and the irregularities in this case are on par, if not worse, than in Purdue. I must say I have a lot of trouble with this line of argument. Purdue was a case decided on the pleadings, but we have a case on summary judgment. I don't think one can compare one to the other. Sex discrimination was adequately alleged in Purdue. In this case, it had to be proved, and it would help me if you focus on the proof rather than talking about the allegations in a different case. Sure. I was just trying to draw the similarities between Purdue and this case. But the facts in this case, I'll start with the district court ignoring the evidence of pressure, not even considering it. That's error number one. Number two is this case was about whether Jane was forced or coerced into sexual activity. And Jane had given a statement within 10 days of the activity at issue to the Deputy Title IX Coordinator at the time, Rabia Khan-Harvey. And Rabia Khan-Harvey memorialized that in notes that said, while Jane does not believe she was forced or coerced into sexual activity, she... And then it goes on. So you... I'm going to jump in here for a minute, please. You have certainly identified evidence of irregularities here and pressure. What is your best evidence, when viewed in the lightmost client to your favor, viewed in your client's favor, that this was done on the basis of sex? Are you saying that you have this evidence and because John Doe is male and Jane Doe is female, that's enough? What is the evidence that would support this is on the basis of sex, which is what Title IX requires? Well, under the Purdue and the cases on summary judgment that have followed Purdue, it is the pressure. I think Purdue is the only case that has been able to go forward. I don't think there have been any summary judgments where the complainant have succeeded in this circuit. But putting those aside, just tell us, please, what your best evidence is that this was on the basis of sex. The best evidence is the pressure of the groups whose all active voices were female against Tim Love to threatening his job. And I would put that as 1A, maybe even 1B, and 1B as the direct pressure from the complainant, in this case Jane, on Tim Love. At least I have with that is that you're not the burden in this litigation is not to show that some private person pressured Loyola. It's to show that Loyola caved, that Loyola itself discriminated. So let me join Judge St. Eve in saying, what's the best evidence that Loyola engaged in sex discrimination? Well, I just gave you the pressure that was on. Yeah, and assume that at least one of us thinks that you need to show caving to pressure and not just pressure. All right, so the caving to the pressure, and we'll just start with Tim Love. Tim Love withheld the statement that Jane did not believe she was forced or coerced. Tim Love was involved in the decision not to interview the male witnesses who would have provided exculpatory evidence for John and then violated Loyola's practices and didn't include a statement in the final investigation report as to why they didn't interview those male witnesses. And then what you're listing might be good evidence of caving, but how do we link it on the basis of sex? Because the court in Purdue and all the others have said it's linked because there was pressure against the person, against the university and the persons who did the action. So the pressure supplies the motive, and all of these irregularities are evidence that Tim Love and others acted on the motive. We also have evidence that some of the panelists had gender-biased views. For example, Brian House said that even before hearing from Jane, just reading her statement in the FIR, I see I'm out of time. You can continue answering Judge St. Eve's question. That even before he heard from Jane, when just reading the FIR, he found it unlikely that Jane would engage in these types of activities because she was sexually inexperienced. He never asked John's level of experience, and to this day he doesn't know John's level of sexual experience. And that, in other cases, is the type of gender-biased stereotyping that has allowed cases to go forward to trial. Thank you, counsel. Thank you. Mr. Land. Good afternoon. Peter Land on behalf of the defendant Loyola University of Chicago, and may it please the court. In answer to your questions about what evidence is there of gender bias in this case, there is none. Mr. Serlick was describing pressure as the primary source of gender-biased evidence, but what he kept referring to and what their briefs refer to is pressure on topics other than to find men responsible for sexual misconduct. The articles that they cite to in their briefs do not involve, with one exception, any article criticizing the university for how it handled a case involving a male who was accused of sexual misconduct. In that article, the only issue that is brought up is that a woman raised a complaint that was lost within the office for a period of days. There was follow-up in about a week, and then that woman did not proceed with that claim. So that article does not address a decision on a case involving a male, and there are none in those articles. What about the evidence regarding the students for reproductive justice? The students for reproductive justice. Which were certainly part of the pressure here. Yes, the students for reproductive justice were raising concerns about Mr. Love. They were raising concerns about lots of topics. One was that lost case involving the one that I just mentioned that wasn't processed. Other topics that that group raised questions about or issues about related to things other than sexual misconduct, like providing contraceptives on campus or the institution providing inaccurate information to pregnant women. There was not a focus from that group about the gender of people accused of sexual misconduct. And that's similar with respect to the other pressure, I'm sorry, the other articles that the plaintiff and the appellant here raised their pressure arguments on. Some of them involved people who were riding a bike around campus who aren't even a campus participant, not a student, and other national media about a golfer who was at Loyola, but the issue related to his conduct in Georgia before he matriculated to Loyola and a criminal proceeding against him in Georgia. Not anything about the disciplinary proceedings that Tim Love's office might have engaged in. You know, Loyola's lack of any explanation for the timing or the reasoning, or the reasons, I guess I should say, for the destruction of the interview recording is somewhat troubling. Is there anything in the record showing whether it occurred before or after Loyola received the litigation hold letter? There's some ambiguous phrasing about keeping documents in footnote 11 on page 31 of your brief. Are you conceding no one was told to also keep recordings? No. So once they received the litigation hold, I'll start with that. They did everything they could to preserve what existed at that time. Mr. Love accessed the online or the computerized system they had, and there were no recordings for this case at that time. As far as what happened with recordings before that, there's evidence in the record about what was on the recording device itself, which was returned to an office that maintained those devices with the recording on it, and that device presumably was used for other cases and therefore written over. And there's a lack of evidence, candidly, about how the recordings were deleted before the litigation hold arrived, but it's clear that they sought to preserve everything once they got the litigation hold and that that was not inconsistent with how they handled other recordings of interviews and other cases without basis of gender. So, again, there's no indication that, I mean, in a perfect world, they would have had that recording as a time of that, but it's not their policy to maintain that, nor was it their practice, because of the reasons that they used the interview recordings for. And they did that for men and women, regardless of cases, whether they involved respondents who were men or women or witnesses. What about Tim Love's contact with Jane and then with the person deciding John's appeal right before John's appeal was decided? That was right after Jane wanted that opinion piece defending Loyola. That could possibly be construed as evidence that the school was trying to reach a particular result to protect its reputation and quell unrest by the female students. Why is that not evidence that at least the appeal decision was biased? Because if you look at that email from Mr. Love to Jane Rowe, what he's addressing is a failure to notify her of something she should have been notified of, which was that once the decision was rendered by the hearing panel, Mr. Doe was not allowed on campus. Once he filed an appeal, he was allowed on campus, and she was not notified of that in a timely way, and she learned that he was on campus otherwise. So his email was focusing on apologizing for their office's mistake in communicating that notice to her, and that's the sole purpose of that email exchange. And the references to the relationship of the survivor community is gender neutral. It's about people who have been submitted complaints of sexual misconduct and how they're communicated with and how they're respected with respect to notification that the person that they were found to have been sexually assaulted by is now allowed back on campus. So it was really focused on communication. As far as his communication with the appellate officer. But let me pick up on what Judge Rogner asked, because we have to view the evidence in the light most favorable to John Doe. And although one could read that email as maybe just an apology about the timing, there are a lot of things that happened immediately after that email that Mr. Love put in place, including a conversation with Meiji who told him please contact her by phone rather than email, and he actually did that. He didn't email her. He called her and then pressured to get the decision out quickly. So it's not just the initial email. That put in action a sequence of events that are a bit troubling. Well, I think that the appeal decision and the timing of its issuance wasn't necessarily affected by that. There's no indication that Mr. Love... But, again, we have to draw every inference in the light most favorable to John Doe. And maybe it was and maybe it wasn't, but this timing is suspicious. A draft had already been prepared of the appellate decision. Mr. Love had already reviewed it. His only suggestion of adjusting it was to clarify what the policy is with respect to audio recordings of the interview. His communication with Mr. McLean was based on the fact that, unusual in their experience, they received this litigation hold letter that threatened litigation, and it was sent to Mr. McLean. It was shared with him. So Mr. Love was mostly, I would say, that his communication with him was focusing on not to be affected by the pressure that that would place on Mr. McLean, which is not gender-based pressure. It's litigation pressure. I'm also troubled by the fact that the final investigative report did not include the summary of Jane Doe's conversation with the prior Title IX coordinator, in which she specifically said that she had not been forced or coerced to engage in sexual activity. That was not turned over for the Board to consider in making its determination, and the fact that the Board focused on a credibility determination of John Doe that focused on whether or not he said there was coercion or not makes that even more troubling to me. Forgive me, but I'm going to add to that because I'm worried too. Why would John Doe lie at the hearing about what he said to the investigator about coercion? It actually makes him look worse to explain that it was only his own opinion that there was no coercion, that Jane had never agreed to that statement. Why would that change make him look less credible? I've been thinking and thinking about it. I can't get inside John Doe's head, although if he's confronted with Jane, who's then going to say they never talked about that, that they never agreed, that there was no coercion, that could be a reason to pull back from that. I don't know. As for the question about the notes, it would have been better for the notes from Rabia Khan to be included in what was considered, but there's nothing inconsistent about those notes. As we've referenced in our briefs, Jane never said that she was forced to coerce. She never said that she was pressured. The focus at the hearing, when they said that she said she gave in, the focus, look at what she was giving in to. He was saying things like, I'm just teasing, or he would just take off her pants and continue with sexual conduct. It wasn't giving in to pressure. He just proceeded. There's a difference. I see I'm out of time. Thank you. Thank you, Counsel. Anything further, Mr. Serluck? If I could just add one thing. I'll give you one minute. I'd like to clarify the record about the recording. First of all, it's a fact issue. But there is nothing in the record that the recording didn't exist as of the time that they got the litigation hold. And there is an abundance of evidence that the recording did exist at the time of litigation hold. Both investigators said they preserved it. Their training materials for the investigators said their duty was to preserve it. Rebecca Harvey testified that the recordings, that it was the practice and policy of Loyola that the recording should be preserved through the finalization of the appeal. And Loyola has not been able to give a chain of custody about where, when, and how that was destroyed. And then the last part about the questions to Mr. Land about permission versus force or coercion. That, again, is a fact issue. And it is a fiction that this case did not concern force or coercion. It's something that Loyola has put in because they know that if this case concerned force or coercion, it's indefensible that the statement from Rebecca Harvey was not this. Thank you. Thank you, Counsel. We will look forward to supplemental memos on the propriety of anonymity, including, we hope, a transcript of what happened in open court. Okay? Thank you very much. The case is under advisement and we're in recess.